OPINION — AG — WHETHER THE DEPARTMENT OF TOURISM AND RECREATION IS LIABLE FOR INJURIES SUSTAINED BY PERSON WORKING ON TRIALS ON STATE LANDS UNDER THE DEPARTMENT'S JURISDICTION IS A QUESTION OF FACT, WHICH CANNOT BE ANSWERED AS A MATTER OF LAW. (TORTS, LIABILITY, VOLUNTEER, NEGLIGENCE SOVEREIGN IMMUNITY, 85 O.S. 2 [85-2](B) (MASTER AND SERVANT, WORKERS' COMPENSATION), OPINION NO. 76-123 (FLOYD W. TAYLOR) FILENAME: m0010935 Abe Hesser Tourism and Recreation Department Attorney General of Oklahoma — Opinion April 9, 1981 JAN ERIC CARTWRIGHT, ATTORNEY GENERAL OF OKLAHOMA The Attorney General has received your request for an official opinion, wherein you inquire, in effect: In cases where "volunteers", some of whom are children, freely donate their time for the construction and maintenance of trails on state controlled lands, is the Tourism and Recreation Department liable for injuries sustained while such "volunteers" are working on the trails? First, it should be noted that, depending upon the facts, persons whom you have classified as "volunteers" may acquire the status of Department employees, independent contractors or employees of independent contractors for purposes of evaluating the Department's duty toward them in connection with liability for personal injuries sustained while working on the trails. 53 Am.Jur.2d, "Master and Servant," 2, p. 82, states: "While it is said at common law that there are four elements which are considered upon, the question whether the relationship of master and servant exists — namely, the selection and engagement of the servant, the payment of wages, the power of dismissal, and the power of control of the servant's conduct — the really essential element of relationship is the right of control, that is, the right of one person, the master, to order and control another, the servant, in the performance of work by the latter, and the right to direct the servant in the performance of the work by the latter, and the right to direct the manner in which the work will be done. It is moreover essential the master shall have control and direction not only of the employment to which the contract relates, but also of all of its details and the method of performing the work, and if these elements of control and direction are lacking, no relationship of master and servant exists. It is the element of control of the work that distinguishes the relationship of master and servant from the independent contractor relationship, for the most important test in determining whether one employed to do certain work is an independent contractor or a mere servant in the control over the work which is reserved to the employer." As stated above, the existence or non-existence of the relationship of master and servant, independent contractor or "volunteer" is a question of fact, depending upon the circumstances of each individual case. If the facts warrant the finding of the existence of a master and servant relationship, i.e. employer/employee, Chap-Tan Drilling Co. v. Myers, 203 Okl. 642, 225 P.2d 373,375 (1950), holds: "It is the non-delegable duty of the master to furnish a reasonably safe place to work, reasonably competent fellow employees, and reasonably safe tools and appliances with which to work." In this connection, 85 O.S. 2b [85-2b] (1980), of the Workers' Compensation Act provides: "All departments, instrumentalities and institutions of this state . . . shall carry Workers' Compensation insurance on each employee, whether engaged in a governmental or a proprietary capacity." The Workers Compensation Act abrogated the common law right of action for damages by an employee and substituted an exclusive remedy in place of all other liability of the employer or any coemployee. The Act is exclusive in the field in which it operates. Carroll v. Dist. Ct. of Fifteenth Judicial District, Okl., 579, P.2d 828, 830 (1979). There are, of course, a broad range of ramifications to consider in the event the Department has the obligation to provide workers' compensation insurance coverage for trail workers, who occupy the status of employees in a given factual context. Beasley v. Bond, 173 Okl. 355, 48 P.2d 299 (1935) defines "independent contractor" as follows: ". . . one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to control of his employer, except as to result of work." In the case of independent contractors, 56 C.J.S. "Master and Servant", 175, p. 863, states the rule: ". . . a contractee is not liable as master for personal injuries suffered by an independent contractor, but, where the contractee reserves the right to direct the manner of performance of the contract in any particular, he is liable as an employer for his negligence." The liability of the Department for injuries to employees of independent contractors presents a wide range of considerations. Ibid., 600, pp. 371-372, states: ". . . ordinarily, the contractee is not liable for injuries to such servant caused by the acts of negligence of the contractor, or subcontractor, or coemployee of the injured servant." Exceptions to the general rule of nonliability exist in the following circumstances: where the servant of an independent contractor is injured by reason of the negligence of the contractee, or of his servants, acting within the scope of their employment, or by the combined fault of the contractor and the contractee, Ibid., 601, p. 373; where the servant is injured by the negligence of the contractor or another contractor, where the contractee failed to exercise reasonable care and was negligent in the selection of a competent contractor or contractors, Ibid.; where the contractee reserves the right to direct the performance of the work, Ibid., 602, p. 374; where a servant of the contractor is injured due to a premises defect resulting from a breach of the contractee's duty to use ordinary care to keep the premises in a reasonably safe condition for the servants of the contractor, Ibid., 603, p. 375; where the contractee furnishes appliances or instrumentalities (e.g., tools) and fails to use ordinary care to furnish proper appliances reasonably safe for the intended use, Ibid., 604, p. 376; where the contractee furnishes materials to be used in the work and negligently or inadequately performs in this respect, and a servant of the contractor is injured as a result, Ibid., 605, p. 377; and where such a servant is injured as a result of coming in contact with a latent or potential danger on the premises, where the contractee has not given warning of or used ordinary care to furnish protection against such dangers, Ibid., 606, p. 378. The next category of persons to be considered is that of "volunteers." 53 Am.Jur.2d, "Master and Servant," 179, p. 238 defines volunteers as: ". . . a person who works for another of his volition, without the knowledge or request of anyone in authority . . . ." While a true "volunteer" may not recover for personal injuries as a servant, 56 C.J.S., "Master and Servant", 177, p. 864, nevertheless, Southland Cotton Oil Co. v. Renshaw, 148 Okl. 107, 299 P. 425 (1931), holds: "While a volunteer . . . assisting or doing the work of a regular employee . . . may not recover on the basis of service, he is entitled to the exercise of that degree of care owing to persons rightfully upon the employer's premises and may base a recovery on general principles of negligence, and notwithstanding the volunteer . . . places himself in a position of danger, even negligently, the employer is liable if the injury could have been avoided by the exercise of ordinary care on his part or that of the employee." Moreover, Renshaw also indicates that knowledge and acquiescence by the employer in the services performed by a "volunteer" may produce the relationship of employer and employee for purposes of the Workers' Compensation Act. Liability for injuries to persons working on the trails can also be predicated upon the rules of law pertaining to invitees, licensees, or in unique circumstances, trespassers. The degree of duty a property owner owes to persons entering upon his premises varies not only insofar as it may be determined that they are invitees, licensees or trespassers, but also within each class and subclass within each class. Rogers v. Cato Oil Grease Co.,-Okl., 396 P.2d 1000 (1964). In all probability, the classification of "invitee" would be the most frequently encountered in litigation arising from injuries suffered by trail workers. Therefore, you should be cognizant of the rule stated in Foster v. Harding, Okl., 426 P.2d 355 (1967): ". . . one rightfully upon another's premises for purposes in which owner has beneficial interest can claim duty of finding premises in reasonably safe condition for discharge of common purpose." Foster v. Harding, supra, describes this duty as one of "ordinary care." Herndon v. Paschal, Okl., 410 P.2d 549
(1966) explains further: "Syllabus by the Court * * * "2. An invitee assumes all normal or ordinary risks attendant upon the use of the premises and the owner or occupant is under no legal duty to reconstruct or alter the premises so as to obviate known and obvious dangers, nor is he liable for injury to an invitee resulting from danger which was obvious or should have been observed in the exercise of ordinary care. "3. Every owner of property is required to use ordinary care for the safety of invitees upon his property and what constitutes ordinary care depends upon the facts and circumstances of each particular case; and where children are invited upon the premises of the owner ordinary care will require the owner to take into consideration the ages, maturity, and capacity of the children, and their capacity to appreciate the dangers to be encountered. "4. The owner of property is not an insurer of the safety of infant invitees on the premises and is only liable for injuries sustained by such invitee, while on the premises, if he fails to exercise reasonable care and caution under the circumstances of the case." Again, whether a person is an invitee, licensee or trespasser is a question of fact; and the scope of the duty owed to such persons will vary with the facts of each case. A second area of potential exposure to liability arises from injuries resulting from the negligent acts of other volunteers, unrelated to premises defects. 65 C.J.S., "Negligence", 63 (47), pp. 747-748, states: "The owner, occupant, or person in charge of premises must use ordinary care to protect invitees or business visitors against the wrongful acts or negligent acts of other persons who may be in or upon the premises, such as other invitees, where he has reasonable cause to anticipate the negligent or wrongful acts and the probability of injury. "The owner, occupant, or persons in charge is not an insurer of an invitee against personal injuries inflicted by other persons on the premises, he is liable only for his negligence, and he is not liable for injury caused by the wrongful or negligent acts of third persons not under his control which he could not reasonably anticipate and guard against. He is not liable for injuries resulting solely from the misuse of otherwise safe premises by a third person where such misuse is not known to him and not anticipated by him." If, under individual facts and circumstances, the Department has reasonable cause to anticipate negligent acts by third persons posing a probability of injury to volunteer workers, liability arguably could be predicated upon absence of supervision, negligent supervision actually furnished, or any number of other factual bases. In any event, such liability would pose a question of fact. Certain claims against the Department may be barred by the State's sovereign immunity from suit without its consent. The applicability of the doctrine of sovereign immunity, however, is a question of fact. 8 Opin. Atty. Gen. 33, Atty. Gen. Opin. No. 76-123. In this respect, you should be aware that procurement of liability insurance has been held to constitute a waiver of sovereign immunity to the extent of such insurance coverage. Schrom v. Oklahoma Industrial Development and Parks Department, Okl., 536 P.2d 904 (1975). The applicability of any given policy of liability insurance will depend upon the terms of the policy as applied to the facts and circumstances of any incident asserted as coming within its coverage. Please be aware that we have attempted only to summarize major areas of potential liability exposure without asserting this as an exhaustive coverage of all possibilities. It is, therefore, the official opinion of the Attorney General that whether the Department of Tourism and Recreation is liable for injuries sustained by persons working on trails on state land under the Department's jurisdiction, is a question of fact, which cannot be answered as a matter of law. (Floyd W. Taylor)