27 N.J. Super. 370 (1953)
99 A.2d 423
MARION E. BOWMAN, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF MARGARET ELIZABETH BUONO, ALSO KNOWN AS MARGARET ELIZABETH MELLEN, DECEASED, PLAINTIFF-APPELLANT,
v.
THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, A CORPORATION, LUCILLE E. KUGLER, GENERAL ADMINISTRATRIX OF THE ESTATE OF ALBERT E. KUGLER, DECEASED, DEFENDANTS-RESPONDENTS, AND CHARLES KUGLER, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued September 9, 1953.
Decided September 18, 1953.
*371 Before Judges EASTWOOD, JAYNE, and FRANCIS.
*372 Mr. Louis J. Greenberg argued the cause for appellant (Mr. Samuel M. Cole, attorney).
Mr. Anthony M. Hauck, Jr., argued the cause for respondent The Central Railroad Company, &c. (Mr. William F. Hanlon, attorney).
Mr. Harvey G. Stevenson argued the cause for respondents Kugler (Messrs. Stevenson, Willette & McDermitt, attorneys).
The opinion of the court was delivered by JAYNE, J.A.D.
Good fortune cannot be depended upon to govern the operations of an automobile. Chance seldom favors the inattentive and incogitant driver, and the folly of drinking and driving is frequently costly.
This cause is somewhat unique in that there is no divergency whatever in the testimony relating to the circumstances accompanying and surrounding the occurrence of the mishap. On the afternoon of December 27, 1951, a collision occurred at the Ridge Road railroad grade crossing east of Whitehouse in the Township of Reading, Hunterdon County, between an automobile owned by the defendant Charles Kugler and occupied on that occasion by his brother Albert E. Kugler and Margaret Elizabeth Buono, and a diesel engine drawing five cars operated by the Central Railroad Company of New Jersey. Both occupants of the automobile were killed.
The testimony places us in possession of this information. On the morning of December 27, 1951, Margaret Elizabeth Buono expressed in the presence of Albert E. Kugler her intention to visit North Branch during the day in quest of employment. Albert announced his willingness to transport her. At about 11:15 A.M. they arrived at the Union House in Whitehouse where each consumed two drinks of whiskey. At about noon they entered Dot's Bar and Grill on Route No. 22 where each had about four drinks of whiskey and a sandwich. They departed about 1:30 P.M. and a half-hour later visited the Hickory Grove Tavern where Margaret *373 drank one glass of whiskey and Albert tossed down two. Shortly thereafter they were lifeless.
The plaintiff in the capacity of administratrix ad prosequendum of Margaret Elizabeth Buono, deceased, sought in the present action the recovery of damages from the Central Railroad Company, the estate of Albert E. Kugler, deceased, and Charles Kugler for the pecuniary losses sustained by the next-of-kin of the decedent in consequence of the fatal mishap.
In response to the motions of counsel an involuntary dismissal of the plaintiff's alleged cause of action against the railroad was granted at the close of the plaintiff's case, and a like dismissal of the action against the estate of Albert Kugler and against Charles Kugler eventuated at the conclusion of the trial. The appeal challenges the propriety of the dismissals of the plaintiff's alleged causes of action against the railroad company and the estate of Albert Kugler.
We perceive no error in the dismissal of the action against the railroad company. Negligence or a circumstantial basis generating a logical or legitimate inference of its existence must be established by competent proof. Oelschlaeger v. Hahne & Co., 2 N.J. 490 (1949); Callahan v. National Lead Co., 4 N.J. 150 (1950); Hansen v. Eagle-Picher Lead Co., 8 N.J. 133 (1951); Gentile v. Public Service Coordinated Transport, 12 N.J. Super. 45 (App. Div. 1951); Murphy v. Terzako, 14 N.J. Super. 254 (App. Div. 1951).
Where there are no disputed facts or disputed inferences to be drawn from the uncontroverted facts, it devolves upon the court to declare the judgment that the law imposes. Kaufman v. Pennsylvania Railroad Co., 2 N.J. 318 (1949); Gentile v. Public Service Coordinated Transport, supra; Layton v. Healy, 12 N.J. Super. 459 (App. Div. 1951); Riley v. Weigand, 18 N.J. Super. 66 (App. Div. 1952); Clinton Milk Co. v. May's Dairy Co., Inc., 19 N.J. Super. 559 (App. Div. 1952).
*374 The reasons for reversal advocated by counsel for the appellant are unsubstantial. The scene of the accident possessed the usual characteristics of a rural railroad grade crossing. There were no extraordinarily hazardous conditions. The fact that the requisite statutory crossing signal was given by the engineer is not controverted. The operation of a railroad train in open territory at a speed of 45 to 50 miles an hour is neither inordinate nor beyond the extent of reasonable anticipation of a motorist in undertaking to pass over an unguarded railroad crossing. In the other particulars, it suffices to say that cogently pragmatical reasons arising out of the dissimilar conditions, circumstances, and available operational limitations have influenced the law to differentiate the duties of those in control of the operation of a railroad engine from those of a motorist where their paths intersect. Vide, Jelinek v. Sotak, 9 N.J. 19 (1952), confirming the right of a railroad engineer to assume that motorists in the exercise of due care, recognizing the train's right of way, will not attempt to cross the tracks in front of the approaching train. In the uncontroverted circumstances of the present case it would be fanciful rather than logical to infer that but for the failure of the fireman to observe the approach of the automobile the train might have been stopped and the collision would not have occurred. The judgment in favor of the railroad company is affirmed.
Our examination of the propriety of the involuntary dismissal of the plaintiff's cause of action against the general administratrix of the estate of Albert Kugler, deceased, does not lead us to a corresponding conclusion.
True, no one from personal observations could testify which of the occupants of the automobile was driving it at the time of the collision. There was, however, testimony that Albert had volunteered to transport the Buono woman to North Branch, that she, unlike Albert, was not licensed to drive a motor vehicle for the year 1951, that in response to an inquiry addressed to her by the bartender of the Hickory Grove Tavern whether she had ever procured an automobile driver's license, she replied, "I did, but I am not driving *375 now," and that the car had been loaned by its owner only to Albert. We think those circumstances were capable of originating at least a probable inference that Albert was operating the vehicle. The assurance addressed to her that he would convey her to her desired destination could reasonably be regarded as an invitation. If he was in fact the driver of the car, the conditions amid which the mishap happened project his carelessness.
The learned trial judge recognized those elements of the evidence but was of the opinion that it conclusively appeared that the plaintiff's decedent in continuing to ride with Albert had voluntarily assumed the risk of a catastrophe such as ensued. It is undoubtedly the general rule of law that a passenger is under the duty to exercise such a degree of care for his or her own safety as the exigencies of the situation reasonably require. The contributory imprudence of which this decedent is said to have been guilty was her voluntary assumption of riding in the motor vehicle operated by a driver who she had reason to know was under the influence of intoxicating liquor.
This subject received consideration in Petrone v. Margolis, 20 N.J. Super. 180 (App. Div. 1952), wherein the test was stated to be whether an ordinarily cautious and prudent person would, under the same or similar circumstances, have incurred the risk of riding with the driver.
Although the testimony disclosed that Albert had consumed between 11:30 A.M. and 2:00 P.M. eight drinks of whiskey, presumably of the quantity customarily served at bars, yet the keeper of the tavern from which the parties last departed testified that although Albert and his companion appeared to be "in fairly good spirits," they did not appear to be intoxicated. And so we are of the opinion that the degree of the incapacitating influence of the intoxicating liquor consumed by Albert and whether the plaintiff's decedent should have known that Albert lacked the ability safely to operate the vehicle were subjects of fact appropriately to have been submitted to the jury. Decisions expressive of the view that such issues are characteristically those for the *376 determination of the triers of the facts are cited in Petrone v. Margolis, supra. The judgment dismissing the alleged cause of action against the administratrix of the estate of Albert Kugler is reversed and a new trial authorized.